## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------X
JOHN KARATHANOS, on behalf of himself and    :
all others similarly situated,                :
                                              :
            Plaintiff,                        :      Case No.
                                              :
v.                                            :
                                              :      CLASS ACTION COMPLAINT
QUINCY BIOSCIENCE HOLDING                     :      FOR (1) DECEPTIVE ACTS OR
COMPANY, INC., a corporation;                 :      PRACTICES AND FALSE
                                              :      ADVERTISING AND (2)
QUINCY BIOSCIENCE, LLC, a limited liability   :      VIOLATIONS OF FEDERAL
company;                                      :      RACKETEER INFLUENCED
                                              :      AND CORRUPT
PREVAGEN, INC., a corporation                 :      ORGANIZATIONS ACT
d/b/a/ SUGAR RIVER SUPPLEMENTS;               :
                                              :
QUINCY BIOSCIENCE MANUFACTURING,              :
LLC, a limited liability company;             :
                                              :
MARK UNDERWOOD, individually and as an        :      JURY TRIAL DEMANDED
officer of QUINCY BIOSCIENCE HOLDING          :
COMPANY, INC., QUINCY BIOSCIENCE,             :
LLC, and PREVAGEN, INC.; and                  :
                                              :
MICHAEL BEAMAN, individually and as an        :
officer of QUINCY BIOSCIENCE HOLDING          :
COMPANY, INC., QUINCY BIOSCIENCE,             :
LLC, and PREVAGEN, INC.                       :
                                              :
            Defendants.                       :
                                              :
                                              :
-------------------------------------------------------X
```

Plaintiff, John Karathanos, brings this class action on behalf of himself and all

others similarly situated, alleging violations of federal law and New York law against

Defendants and, for his Class Action Complaint ("Complaint"), alleges and says:

#8984585.2

1.     Plaintiff brings this class action to recover compensatory damages, treble damages, and other appropriate relief for the unlawful, wrongful and/or fraudulent and deceptive acts or practices of Defendants, Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., Quincy Bioscience Manufacturing, LLC, Mark Underwood, and Michael Beaman (collectively the "Defendants"), in connection with the labeling, advertising, marketing, promotion, distribution, and sale of Prevagen, a dietary supplement that purportedly improves memory. Prevagen contains one active ingredient, the dietary protein apoaequorin, and it is sold in the State of New York and throughout the United States in a variety of strengths and forms.  Through an extensive and uniform nationwide marketing campaign, and on each Prevagen package, Defendants falsely represent that Prevagen is clinically shown  (a) to improve memory; (b) to improve memory in 90 days; (c) to improve memory problems associated with aging; and (d) to provide other cognitive benefits including, but not limited to, healthy brain function, a sharper mind, and clearer thinking.  As alleged in this Complaint, these representations are false and unlawful.  Defendants' unlawful false representations deceived consumers, including Plaintiff and the members of the proposed Nationwide Class and the New York Class as defined in Paragraphs 35-36 of this Complaint. Defendants engaged in acts that are deceptive and misleading in a material way,  and Plaintiff has been injured by reason thereof.

2.     Throughout the Class Period, Defendants have employed numerous media to convey their unlawful, false, uniform, deceptive and misleading brain function and memory representations to consumers, including print media (magazines and newspapers), electronic media (including the Internet and social media websites) and, importantly, in retail stores on the front, sides, and back of the Prevagen packaging and labeling where it cannot be

missed by consumers. The only reason a consumer would purchase Prevagen is to obtain the advertised brain function and memory benefits, which it does not provide. Prevagen is a singular purpose product: its only purported benefit is to enhance brain function and memory -- which it does not and cannot do.

3. As a result of Defendants' materially deceptive, misleading, and unlawful brain function and memory representations concerning Prevagen, consumers – including Plaintiff and the members of the Nationwide Class and/or the New York Class – have been injured because they purchased products that do not perform as advertised. Under federal law and New York law, Plaintiff and the members of the Nationwide Class and/or the New York Class are entitled to be compensated for the money they spent on Prevagen products.

4. Plaintiff brings this class action on behalf of himself and other similarly situated consumers who purchased Prevagen, and seeks by this lawsuit to halt the dissemination of this unlawful, false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain monetary redress for those who have purchased Prevagen. Based on violations of federal law and New York law, as alleged herein, Plaintiff seeks monetary relief for consumers who purchased Prevagen.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d)(2) and 18 U.S.C. § 1964(c). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action in which there are in excess of 100 Class members and some members of the Nationwide Class and the New York Class are citizens of a state different from Defendants.

6. This Court has personal jurisdiction over Defendants because each of the Defendants is authorized to conduct and does business in New York, including this District. At

all times relevant to this action, Defendants marketed, promoted, distributed, and sold Prevagen in New York and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in the State of New York through their promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of personal jurisdiction by this Court permissible and consistent with due process.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) and 18 U.S.C. § 1965 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and because Defendants conducted business here.

## PARTIES

8.      Plaintiff is a resident of Bayville, Nassau County, New York.  Plaintiff stopped taking Prevagen in mid-January 2017, after taking it regularly since at least May 2016. Plaintiff began taking Prevagen after seeing television advertisements on Fox News and his local Channel 38 touting the brain function and improved memory benefits of Prevagen.  He was again exposed to the brain function and memory representations when he reviewed the labels of the product purchased at CVS, Walgreens, and Rite Aid pharmacies.  Believing that he would have to use Prevagen for at least 90 days before realizing the benefits of the product, Plaintiff used Prevagen on a daily basis for at least nine months.  Had Plaintiff known the truth about Defendants' false representations, he would not have purchased Prevagen.

9.      Defendant, Quincy Bioscience Holding Company, Inc., is a Wisconsin corporation with its principal place of business located at 726 Heartland Trail, Suite 300, Madison, Wisconsin.  Quincy Bioscience Holding Company, Inc. transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, acting alone or in concert with others, Quincy Bioscience Holding Company, Inc.,

through its wholly-owned subsidiaries, has advertised, marketed, promoted, distributed, and sold Prevagen to consumers throughout the United States, including New York.

      10.    Defendant, Quincy Bioscience, LLC, is a wholly-owned subsidiary of Quincy Bioscience Holding Company, Inc. It is a Wisconsin limited liability company with its principal place of business located at 726 Heartland Trail, Suite 300, Madison, Wisconsin. Quincy Bioscience, LLC transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, acting alone or in concert with others, Quincy Bioscience, LLC has advertised, marketed, promoted, distributed, and sold Prevagen to consumers throughout the United States, including New York.

      11.    Defendant, Prevagen, Inc., also doing business as Sugar River Supplements, is a wholly-owned subsidiary of Quincy Bioscience Holding Company, Inc.  It is a Wisconsin corporation with its principal place of business located at 726 Heartland Trail, Suite 300, Madison, Wisconsin.  Prevagen, Inc. transacts or has transacted business in this District and throughout the United States.  At all times relevant to this Complaint, acting alone or in concert with others, Prevagen, Inc. has advertised, marketed, promoted, distributed, and sold Prevagen to consumers throughout the United States, including New York.

      12.    Defendant, Quincy Bioscience Manufacturing, LLC, is a wholly-owned subsidiary of Quincy Bioscience Holding Company, Inc.  It is a Wisconsin corporation with its principal place of business located at 726 Heartland Trail, Suite 300, Madison, Wisconsin. Quincy Bioscience Manufacturing, LLC transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, acting alone or in concert with others, Quincy Bioscience Manufacturing, LLC has advertised, marketed, promoted, distributed, and sold Prevagen to consumers throughout the United States, including New York.

13.     Defendant, Mark Underwood ("Underwood"), is the co-founder and President of Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, and Prevagen, Inc. Underwood is a member of the Board of Directors of Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC, and he is a shareholder of Quincy Bioscience Holding Company, Inc., owning 33 percent of its outstanding shares, the largest individual ownership interest.  Defendant Underwood, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States, including New York.

14.     At all times relevant to this Complaint, acting alone or in concert with others, Defendant Underwood has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, and Prevagen, Inc., including the acts and practices set forth in this Complaint.  Defendant Underwood is a member of the marketing creative team, serving as the final decision-maker on advertising claims across all channels of distribution and media platforms.  Defendant Underwood coordinates advertising claim language review with counsel, translates scientific data into marketing language, and directs research programs and activities. Defendant Underwood has appeared in television infomercials broadcast nationwide, including in New York, touting Prevagen's memory improvement benefits, and he has co-authored studies on Prevagen.  Underwood also authored the "Brain Health Guide," a user guide disseminated nationwide, including in New York that describes how Prevagen works and the purported science behind this dietary supplement.

15.     Defendant, Michael Beaman ("Beaman"), is the co-founder, former President, and current Chief Executive Officer of Quincy Bioscience Holding Company, Inc.,

Quincy Bioscience, LLC, and Prevagen, Inc.  Defendant Beaman is the Chair of the Board of

Directors for Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing,

LLC, and a shareholder of Quincy Bioscience Holding Company, Inc., owning 22 percent of its

outstanding shares, the second largest individual ownership interest.  Defendant Beaman, in

connection with the matters alleged herein, transacts or has transacted business in this District

and throughout the United States, including New York.

      16.     At all times material to this Complaint, acting alone or in concert with

others, Defendant Beaman has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of Quincy Bioscience Holding Company, Inc., Quincy

Bioscience, LLC, and Prevagen, Inc., including the acts and practices set forth in this

Complaint.  Beaman has given media interviews, signed research agreements, pre-approved

research proposals, and reviewed Defendants' advertising, including advertising that has been

disseminated and broadcast nationwide, including in New York.

      17.     Defendants, Quincy Bioscience Holding Company, Inc., Quincy

Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively the

"Quincy Bioscience Enterprise"), have operated as an enterprise, within the meaning of 18

U.S.C. § 1961(4), while engaging in the deceptive and misleading acts and practices alleged

herein.  The members of the Quincy Bioscience Enterprise have conducted the business

practices described herein through an interrelated network of companies that have common

ownership, officers, managers, business functions, employees, and office locations.  At all

times relevant to this Complaint, Defendants Beaman and Underwood have formulated,

directed, controlled, had the authority to control, and/or participated in the acts and practices of

the Quincy Bioscience Enterprise.

## FACTUAL ALLEGATIONS

18.     Prevagen is a dietary supplement containing the active ingredient apoaequorin, a dietary protein that, according to Defendants, was originally obtained from a species of jellyfish called Aequorea victoria. At all times relevant to this Complaint, Prevagen has been available for retail purchase by Plaintiff and Class members in Regular Strength (10 milligrams) and Extra Strength (20 milligrams) capsules and chewable versions, and Prevagen Professional (40 milligrams) capsules (collectively the "Prevagen Products").

19.     A bottle of each of the Prevagen Product contains 30 tablets and provides a 30-day supply if taken once daily according to the product label's suggested use. The price per bottle varies depending on the seller, with prices ranging from $24.29 to $58.53 for Prevagen Regular Strength, from $32.17 to $69.95 for Prevagen Extra Strength, $16.49 to $51.29 for Prevagen Chewable, and from $39.33 to $68.40 for Prevagen Professional.

20.     Since at least 2007, Defendants have labeled, advertised, marketed, promoted, distributed, and sold the Prevagen Products to the public and healthcare practitioners through their own Internet websites, including Prevagen.com, QuincyBioscience.com, PrevagenPro.com, PrevagenES.com, and SugarRiverSupplements.com, and through health stores, pharmacies, retail stores, and retail websites located in or accessible from New York, including Amazon, CVS, Duane Reade, Rite-Aid, Meijer, the Vitamin Shoppe, and Walgreens. According to published reports, retail sales of Prevagen in the United States from 2007 through mid-2015, minus refunds, totaled at least $165 million. Upon information, belief, and logical surmise, more than five percent (5%) of those retail sales were made to New York consumers.

21.     At all times relevant to this Complaint, Defendants widely advertised the Prevagen Products through their own Internet websites, including Prevagen.com, QuincyBioscience.com, PrevagenPro.com, PrevagenES.com, PrevagenReviews.com,

SugarRiverSupplements.com, and HopeTrials.com, as well as through televised infomercials, short form television commercials, radio, social media, newspapers, and magazines.

22.      Defendants' infomercials were broadcast frequently as the "Better Memory Show" from July 2013 to April 2015. They employed an interview format and featured Defendant Underwood, explaining the problems associated with memory loss, the purported benefits of the Prevagen Products, and research that he claimed supported Defendants' memory-improvement claims.

23.      Defendants' short-form television advertisements have been broadcast nationally on various networks, including CNN, Fox News, and NBC, and their radio advertising campaign includes spots on Internet and satellite radio services such as Sirius and iHeartRadio.

24.      Defendants have an active social media presence with accounts on Facebook, Instagram, Twitter, Pinterest, and YouTube.

25.      Defendants' advertising campaign also included a 2015 "Better Memory Tour." Company representatives traveled aboard the "Prevagen Express" bus to various health food centers and health expositions across the country, showcasing the Prevagen Products and Defendant Underwood's Brain Health Guide, which accompanies product orders and can be downloaded from Defendants' Internet websites.

26.      At all times relevant to this Complaint, Defendants engaged in acts that are deceptive or misleading in a material way that are likely to mislead a reasonable consumer acting reasonably under the circumstances by falsely and misleadingly representing, among other things, through express and implied claims and consumer and expert endorsements, that the Prevagen Products improve memory and provide other cognitive benefits, and that the

Prevagen Products' effects on memory and cognition are clinically proven. To induce

consumers to purchase the Prevagen Products, Defendants have disseminated, or caused to be

disseminated, advertisements, labeling, and other marketing materials that are likely to mislead

reasonable consumers acting reasonably under the circumstances.  Plaintiffs have been injured

by reason thereof.  These advertisements contain the following statements and depictions,

among others:

> **A.**     **Prevagen Regular Strength Label**




**SIDE LABEL:**



As we age, we lose proteins that support our brain.* Prevagen® supplements these proteins during the natural process of aging.*

✓ Supports Healthy Brain Function*
✓ Only One Capsule per Day
✓ Safe & Clinically Tested

Prevagen® (apoaequorin) is clinically shown to help with mild memory problems associated with aging.*

Prevagen® contains apoaequorin, a protein which uniquely supports critical brain functions.* In clinical studies Prevagen® improved memory within 90 days.*

**www.prevagen.com**

Questions? Call 888 565 5385 or visit www.prevagen.com

**BACK LABEL:**

**Clinically Tested**
In a computer assessed double-blinded, placebo controlled study, Prevagen® improved memory.*

[Bar chart titled "Prevagen Improves Memory" with bars at 0 Days, 30 Days, 90 Days]

Originally discovered in jellyfish, Prevagen® is now made in a controlled scientific process. Developed by university researchers and scientists in Madison, Wisconsin.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

**B.     Prevagen Television Advertisement:  "Jellyfish Protein"**

ON SCREEN: Memory Improvement?

ANNOUNCER: Can a protein originally found in the jellyfish improve your memory?

ON SCREEN: QUINCY BIOSCIENCE Our Scientists Say "Yes!"

ANNOUNCER: Our scientists say yes.

ON SCREEN: Actor portrayal [Screen depicts a smiling doctor wearing a white coat, with the words "Quincy Bioscience" and "Our Scientists Say "Yes!" appearing next to the doctor. In the next scene, another doctor in a white coat is looking into a microscope. The "Actor Portrayal" disclosure appears in both scenes in small print at the bottom of the screen.]

Supports Healthy Brain Function* [Appears in large font in the center of the screen]

*These statements have not been evaluated by the Food and Drug Administration.

This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure appears briefly in a box in much smaller font at the bottom of the screen.]

ANNOUNCER: Researchers have discovered a protein that actually supports healthier brain function. It's the breakthrough in a supplement called Prevagen.

-11-

ON SCREEN: Prevagen

Supplements Brain Proteins

ANNOUNCER: As we age, we lose proteins that support our brain.

ON SCREEN: Prevagen Improves Memory

Chart [A full-screen bar chart depicts memory improving significantly over 90 days]

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure appears briefly in a box in much smaller font at the bottom of the screen.]

ANNOUNCER: Prevagen supplements these proteins and has been clinically shown to improve memory.

ON SCREEN: Safe Effective

ANNOUNCER: It's safe and effective.

ON SCREEN: Available at Walgreens

CVS/pharmacy RITE AID

ANNOUNCER: For support of healthier brain function, a sharper mind and clearer thinking, try Prevagen for yourself today.

**C.     Website Capture - Prevagen.com (Dec. 1, 2015):**

**Improve your memory with Prevagen***

Prevagen can improve memory*

Prevagen was tested in a large double-blind, placebo-controlled study using computers to assess brain performance. 218 adults over 40 years old participated in the three month study. Prevagen significantly improved learning and word recall.*

Around the age of 40, our brain begins to need more cognitive support.* Prevagen can improve memory within 90 days.*

Common examples where Prevagen may help

- Walk into a room and forget why.
- Spend extra time looking for car keys or purse.
- Trouble remembering names or faces.

These are everyday examples of normal memory challenges that can come with aging. Prevagen has been tested and shown to improve memory.*

Prevagen is a safe and effective supplement

Only Prevagen contains the patented ingredient apoaequorin, a unique protein originally obtained from a specific species of jellyfish called Aequorea Victoria found in the Puget Sound. Apoaequorin is a protein our brains need for healthy function but is diminished in the aging process.

Prevagen is very safe and extremely well-tolerated. There are no known contraindications with any supplements or medications

Make Memories Last a Lifetime

There's nothing more fulfilling than being at your mental best in order to enjoy every moment with friends and family. But that can be difficult for some of us due to normal, age-related memory loss.

**Order Now**

**How does Prevagen ® work?**

Laboratory research has demonstrated that Prevagen has powerful cell supporting activity by providing a protein originally found in jellyfish.

In aging, these proteins are depleted leaving brain cells vulnerable to damage. Prevagen is made by Quincy Bioscience and was developed by scientists and University researchers in Madison, Wisconsin.

\*\*\*

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure refers back to each asterisk on this webpage. It appears in a box in white text against a blue background at the very bottom of the webpage.]

\*\*\*

**Protein Chemistry**

Apoaequorin is capable of crossing the blood brain barrier (BBB) and the GI barrier

When cerebrospinal fluid (CSF) and blood plasma samples were taken from a population of dogs to which apoaequorin was orally administered, these samples showed quantifiable evidence that the supplement was present in the nervous and circulatory systems of the animals. Using a specially designed enzyme-linked

-13-

immunosorbent assay (ELISA) linked to an electrochemiluminescent assay, it was also demonstrated that apoaequorin levels in dog CSF and plasma increased proportionately as a function of time. These data indicate that apoaequorin is capable of crossing the blood brain barrier and the gastrointestinal barrier via its presence in dog CSF and blood plasma, respectively.

As we age, we lose about 85,000 brain cells each day. Aging and how Prevagen® can help

In the United States, 10,000 baby boomers turn 50 every day. And although a touch of gray hair can look distinguished, there are other age-related issues that may be unwanted, such as the mild memory problems associated with aging. Your brain is made up of many small cells, and controls everything you do. To stay healthy your brain contains proteins that support brain health.

As we age, the body's ability to naturally produce this protein slows down. When this happens you may start to experience difficulty with memory, focus and concentration. Prevagen helps support brain cells by supplementing the proteins with the patented ingredient apoaequorin and supports healthier brain function.*

Researchers have discovered a protein that actually supports healthy brain function*

For many years, researchers have known that the human brain loses cells throughout our lives, part of the natural process of aging. In fact, we lose about 85,000 brain cells per day, that is one per second, over 31 million brain cells every year! This impacts every aspect of your life... how you think and how you feel. Recently, scientists made a significant breakthrough in brain health with the discovery that apoaequorin can support healthy brain function, help you have a sharper mind and think clearer.*

Prevagen Supports:

**Healthy Brain Function***

Apoaequorin is in the same family of proteins as those found in humans, but it was originally discovered in one of nature's simplest organisms—the jellyfish.

**Sharper Mind***

Now produced in a scientific process, researchers formulated this vital protein into a product called Prevagen®. Prevagen is clinically shown to help with mild memory problems associated with aging.

**Better Memory***

This type of protein is vital and found naturally in the human brain and nervous system. As we age we can't make enough of them to keep up with the brain's

-14-

demands. Prevagen supplements these proteins during the natural process of aging to keep your brain healthy. Prevagen comes in an easy to swallow capsule. It has no significant side effects and will not interact with your current medication.

**Clearer Thinking***

Just how well does Prevagen work? In a computer assessed, double-blinded, placebo controlled study, Prevagen improved memory for most subjects within 90 days.*

***

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure refers back to each asterisk on this webpage. It appears in a box in white text against a blue background at the very bottom of the webpage.]

***


**Quincy Bioscience is a research-based biotechnology company**

***

Prevagen® is the company's flagship consumer brand containing apoaequorin which has shown in published studies to be safe and effective. A landmark double-blind and placebo controlled trial demonstrated Prevagen improved short-term memory, learning, and delayed recall over 90 days.

As a result of the supplement's safety and effectiveness, Prevagen is now the number one selling brain support supplement in chain pharmacies across America according to Nielsen data (December 2014).

***

**Nobel prize in chemistry**

Apoaequorin (Pronounced: a-poe-a-kwor-in) was first discovered in 1962 in glowing jellyfish. Turns out these proteins caused the jellyfish to glow when the proteins bound to calcium ions. We've learned a lot about how calcium functions in the body by using apoaequorin. The Princeton professor who discovered this protein and his colleagues who helped develop the research won the Nobel prize in 2008. Prevagen does not cause any glowing!

Quincy Bioscience and Apoaequorin

Founded in June of 2004 and based in Madison, Wisconsin, Quincy Bioscience is a biotechnology company focused on the discovery, development, and commercialization of novel technologies to address cognitive issues and other age-related health challenges. The core technology of the company is the innovative application of the calcium-binding protein Apoaequorin. Using this cutting edge protein originally discovered in jellyfish in the early 1960s, the company focuses on alleviating the consequences of impaired calcium homeostasis (the imbalance of calcium ions) which can lead to mild memory loss associated with aging.

\*\*\*

**Frequently Asked Questions about Prevagen**

\*\*\*

**What is Prevagen?**

Prevagen (Pronounced: prev-uh-gen) is a new brain health supplement and functions unlike other brain or memory supplements.* Prevagen's patented ingredient is a new use for a well-known protein called "apoaequorin" which was originally found in a certain species of jelly fish.

Prevagen has been clinically tested and shown to improve mild memory problems that occur in aging.*

**What are the most commonly reported benefits of Prevagen?**

- Improves absentmindedness*
- Improves memory*
- Helps with mild memory problems associated with aging*

**How long will it take to feel results?**

Daily use for 30-90 days is a reasonable length of time to experience results.

**Do you have research supporting Prevagen?**

Yes. A recent memory study showed Prevagen significantly supported cognitive function compared to placebo.

**View the study** [links to the Madison Memory Study]

\*\*\*

**What are all the asterisks (*) for?**

The asterisk (*) denotes the FDA disclaimer for dietary supplements. This statement or "disclaimer" is required by law (DSHEA) when a manufacturer

-16-

makes a structure/function claim on a dietary supplement label. In general, these claims describe the role of a nutrient or dietary ingredient intended to affect the structure or function of the body. The manufacturer is responsible for ensuring the accuracy and truthfulness of these claims; they are not approved by FDA. For this reason, the law says that if a dietary supplement label includes such a claim, it must state in a "disclaimer" that FDA has not evaluated this claim. The disclaimer must also state that this product is not intended to "diagnose, treat, cure or prevent any disease," because only a drug can legally make such a claim, for more information on dietary supplements, please visit www.fda.gov

*** 

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure refers back to each asterisk on this webpage. It appears in a box in white text against a blue background at the very bottom of the webpage.]

***

**Watch Prevagen Reviews**

After over 15 years of research, we know Prevagen works to improve memory. But you don't have to take our word for it. On the following pages, you'll find Prevagen reviews from actual Prevagen users and hear how this brain health supplement, originally derived from a jellyfish, has helped them.

If you feel like you can relate to any of these people—whether you have trouble remembering names, or forget where you placed your keys—you may be experiencing age-related memory loss. This is a totally normal part of aging, but as you will see from watching these Prevagen reviews, you CAN take action to preserve your memories.

**The personal experiences you'll find here are from actual Prevagen users.** They are not from employees, friends or any party where compensation was offered as an inducement for providing a favorable testimonial. These are real reviews from real people.

***

Mary remembers names better

I would say I probably noticed a difference within a month of taking Prevagen. That I was able to remember things better. And I wasn't as frustrated with myself, which was great.

***

Jim improved his memory*

I had such a positive experience from Prevagen that I would urge anybody to at least try it and see if it'll work for them, because it sure helped me.

***

It was about 3 weeks when the product began to work for me, and it's just getting better. I think it's important to optimally age, there's no such thing as anti-aging, we're all going to age. But for me, this has been optimal.

***

**D.    The Brain Health Guide, Mark Underwood (Feb. 11, 2016)**

**CHAPTER 1**
**AMERICA'S STATE OF BRAIN HEALTH**

As we age, mild memory problems result in more difficulty in remembering. They also lead to an inability to focus, pay attention or stay on task. With advancing age comes increasing stress that can affect the brain.

***

**CHAPTER 10**
**WHAT IS PREVAGEN?**

***

In order to stay healthy, the brain has specific proteins which help support brain cell function. Like other physiological processes in normal aging, the brain's level of these proteins decreases as we grow older. In the progression of normal aging, signs of forgetfulness become more obvious in our 50s. What was once easy to recall, now takes a little longer to retrieve.

**How often do these occur? You may want to ask a loved one to help you answer the questions!**

1. Forget words you want to use in a conversation.

2. Set items down and then forget where you placed them.

3. Repeat tasks that you already completed previously.

4. Forget details of what you did or what happened to you yesterday.

5. Ask someone the same question twice or telling [sic] the same story,

-18-

*Prevagen may help you improve your memory.* *

**Breakthrough Brain Health Supplement***
Prevagen is a safe and effective brain health supplement shown to improve memory.* Prevagen supports brain function by using the protein apoaequorin to supplement the proteins that are diminished as we age.* Supplementing with Prevagen has also shown to support the performance of the brain as demonstrated in cognitive testing. (More on this topic in the next chapter.)*

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure refers back to each asterisk on this page. It appears in a box in smaller bold text at the very bottom of the page.]

***

**Chapter 11**
**THE LATEST SCIENCE**

***

**PREVAGEN IMPROVES MEMORY***

In 2010, Quincy Bioscience set out to build on the strong evidence that had been gathered on ability [sic] of apoaequorin to improve memory*

***

The goal of the Madison Memory Study was to measure Prevagen's ability to improve brain function using computer software in people experiencing normal age-related mild memory difficulties.*

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure refers back to each asterisk on this page. It appears in a box in smaller bold text at the very bottom of the page.]

***

A total of 218 adults ages 40 to 91 years old, were tested at predetermined one-month time intervals and changes on specific assessments of cognitive function were measured at various time points during the study. The final results of the study were very encouraging. The data showed that people taking Prevagen had statistically significant improvement in several areas of memory compared to

baseline and to placebo.* The Prevagen group improved their scores in executive function, learning, memory, and word recall.*

\*\*\*

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure refers back to each asterisk on this page. It appears in a box in smaller bold text at the very bottom of the page.]

\*\*\*

**A Life of Quality**
Have you ever heard something, and it made an impression on you? That is verbal learning. The act of remembering is primal. And the ability to summon information previously heard or seen is at our core. Being able to recall (and repeat) something that occurred earlier gives our lives greater meaning and purpose.

An example might be experiencing something someone said -- words from a colleague or an actor in a film. Those words -- anything from something profound and memorable to a joke, made an impression. You wanted to remember what you had just heard so you could relate it to others. Still another example might be hearing of a new book, and wanting to recall its title so you could later find out more. Both exhibit verbal learning, an essential brain activity that helps us retain information.

When the International Shopping Recall List Test was presented in the Madison Memory Study, a short shopping list was read aloud to subjects three times in succession with the participants given the chance to repeat what they could remember from the list after each time. Then the other tests were taken. When completed, testers asked each subject to recall verbally what was on the shopping list. The results were significant. Over the 90-day run of the study, subjects within a normal cognitive range and those with mild to moderate impairment fared well. Both groups had taken Prevagen during the three-month study period.

While little in this world is perfect, research, executed properly, uncovers ways that can improve the quality of our lives as we age. And being able to remember and repeat something verbally to others is an example of that quality. In the Madison Memory Study, the Prevagen arm significantly improved all of the above mentioned areas. For more about the study, see the appendix.

\*\*\*

**EPILOGUE**

**RESEARCHERS DISCOVER "A GIFT FROM THE SEA"**

Mark Underwood, President and Co-Founder Quincy Bioscience

\*\*\*

Together with Mike Beaman, my business partner, we have developed a way for this unique jellyfish technology to be used for supporting the brain.\*

\*\*\*

My goal is to help as many people as we can through the further development of Prevagen, by educating people on brain health, and by providing the public with a supplement that has been shown to work and is safe and scientifically sound.

\*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. [This disclosure refers back to the asterisk on this page. It appears in a box in smaller bold text at the very bottom of the page.]

\*\*\*

### E.  The Better Memory Show Infomercial

ON SCREEN: Teri Barr

Television Investigative Journalist

TERI BARR: Hello, I'm Teri Barr. I've been a writer and television investigative journalist for more than 20 years, reporting on stories that can dramatically impact your health and well-being and the health of the people in your life you love and care about. Now, several years ago, I came across a story about a company doing some research on the brain, and I wanted to share this with you. They discovered a protein in jellyfish and they thought it might have the ability to support your brain and improve your memory. So, our special guest today is going to share with us exactly how this gift from the sea holds the key to improving normal age-related memory problems and so much more. I'm happy to have with us today Mark Underwood, he is a neuroscientist. He is also an author and has been featured in media all across the country talking about this discovery. And he also has a very special personal story to share. Mark, thank you for joining us today.

ON SCREEN: Mark Underwood

President of Quincy Bioscience, Neuroscientist, Author

MARK UNDERWOOD: Well, thank you, Teri. Memory problems are a big issue.

TERI BARR: Right.

MARK UNDERWOOD: As the baby boomers continue to age, we see more and more people that are struggling with day-to-day activities. They might become forgetful and lose their car keys or their cell phone, but certainly, you know, even some of us, well, we might walk into a room and forget where we're going.

TERI BARR: Mm-hmm.

MARK UNDERWOOD: -- or we're rummaging through the refrigerator and we forget what we're up to. Our research has shed some new light on how to improve these mild memory issues and, hopefully, it will be helpful for all those that are out there watching us today to learn more about how the brain works, how it changes with the aging process and, specifically, how we can use that unique protein found in the jellyfish to help our brains, well, get a little better, help our memory improve, and that's offering a lot of hope to people, those that have already been using Prevagen for some time, to help them with their day-to-day lives and make it a little bit easier.

***

MARK UNDERWOOD: A large double blind, placebo-controlled trial that we completed that showed great efficacy for Prevagen, showing statistically significant improvements in word recall, in executive function, and also in short term memory.

ON SCREEN: Word Recall

Executive Function

Short-term Memory

ON SCREEN: In a clinical trial participants showed improvement in memory in 90 days. Results published in peer reviewed journal in July 2011.

MARK UNDERWOOD: In the clinical trial, we were showing those benefits after the first month and those continued to improve after the second and third months.

***

ON SCREEN: Sue H.

Prevagen User

SUE H.: When I first heard about Prevagen from my neighbor, Jan, I hoped that it would help my middle-aged memory become a little clearer. At work, I multitask all day long and I would find myself standing over somewhere wondering, why did I come back here. I find that a lot less now. Since I started taking Prevagen, I feel like I'm able to stay on task without wavering off and doing three different

-22-

things, multitasking. I can stay on task and finish my project and it's just easier.
We see probably 60 patients in our office a day. The doctor asked several of us if
we remembered this certain patient and I was the only one that could come up
with her name. They think I'm amazing. They just are amazed at my memory at
work. I would tell my friends and relatives that Prevagen is great. I'd recommend
it to all of them no matter what age just because of the benefits that I have seen in
my focus and memory.

*** 

27.     To substantiate their materially false and misleading claims that

Prevagen improves memory, is clinically shown to improve memory, improves memory within

90 days, is clinically shown to improve memory within 90 days, reduces memory problems

associated with aging, is clinically shown to reduce memory problems associated with aging,

provides other cognitive benefits, and is clinically shown to provide other cognitive benefits,

Defendants primarily rely on one double-blind, placebo-controlled human clinical study using

objective outcome measures of cognitive function. This study, called the "Madison Memory

Study", involved 218 subjects taking either 10 milligrams of Prevagen or a placebo. The

subjects were assessed on nine computerized cognitive tasks, designed to assess a variety of

cognitive skills, including memory and learning, at various intervals over a period of 90 days.

The "Madison Memory Study" shows that Prevagen does not improve memory.

28.     After failing to find a treatment effect for the sample as a whole, the

researchers conducted more than 30 post hoc analyses of the results, examining data broken

down by several variations of smaller subgroups for each of the nine computerized cognitive

tasks. This methodology greatly increased the probability that some statistically significant

differences would occur by chance alone.  Even so, the vast majority of these post hoc

comparisons failed to show statistical significance between the treatment and placebo groups.

Given the sheer number of comparisons run and the fact that they were post hoc, the few

positive findings on isolated tasks for small subgroups of the study population do not provide

reliable evidence of a treatment effect.  The post hoc analyses of the results show that Prevagen does not improve memory.

29.     Nevertheless, Defendants unlawfully and falsely and misleadingly misrepresented  the results of the "Madison Memory Study" in their advertising.  For example, the chart below appeared in the product labels for the Prevagen Products and Defendants' television advertisements and Internet website, prevagen.com.  It falsely and misleadingly represents that a "double-blinded, placebo controlled study" showed dramatic improvement in recall tasks when, in fact, the results for the specific task referenced in the chart showed that Prevagen does not improve memory.  In addition, Defendants eliminated from the chart one of the four data points in the study; namely, day 60. At day 60, the recall task scores of subjects taking Prevagen actually declined from day 30, and were slightly worse than the recall task scores of subjects in the placebo group.



30.     Defendants' clinical studies show that at a minimum these claims on the side label are false: "Prevagen (apoaequorin) is clinically shown to help with mild memory

problems associated with aging." "In clinical studies Prevagen improved memory within 90 days."

31.      Defendants' clinical studies show that at a minimum this claim on the back label is false: "In a computer assessed, double-blinded, placebo controlled study, Pravegen improved memory."

32.      Defendants' clinical studies show that at a minimum this claim in the Prevagen television advertisement "Jellyfish Protein" is false: "Prevagen supplements these proteins and has been clinically shown to improve memory."

33.      Defendants' clinical studies show that at a minimum these claims in the Website capture - Prevagen.com (Dec. 1, 2015) are false: "Prevagen is clinically shown to help with mild memory problems associated with aging" and "Prevagen has been clinically tested and shown to improve mild memory problems that occur in aging."

34.      Defendants' claims that the Prevagen Products improve memory and cognition rely on the theory that the products' dietary protein, apoaequorin, enters the human brain to supplement endogenous proteins that are lost during the natural process of aging. Defendants developed their product and created their extensive and widespread marketing campaign based on this theory.  However, Defendants do not have studies showing that orally-administered apoaequorin can cross the human blood brain barrier and, therefore, they do not have evidence that apoaequorin enters the human brain.  To the contrary, Defendants' safety studies show that apoaequorin is rapidly digested in the stomach and broken down into amino acids and small peptides like any other dietary protein.

## CLASS DEFINITIONS

35.      Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil

Procedure and seeks certification of Class(es) against Defendants for violations of (a) federal

law and (b) New York law, as defined below.

> Nationwide Class

> All consumers who, within the applicable statute of limitations period, purchased Prevagen in the United States until the date when notice is disseminated.

> Excluded from the Nationwide Class are Defendants and their officers, directors and employees and those who purchased Prevagen for the purpose of resale.

36.     Alternatively, Plaintiff brings this action on behalf of himself and all

other similarly situated New York consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the

Federal Rules of Civil Procedure and seeks certification of the following Class:

> New York Class

> New York consumers who, within the applicable statute of limitations, purchased Prevagen until the date notice when is disseminated.

> Excluded from the New York Class are Defendants and their officers, directors and employees, and those who purchased Prevagen for the purpose of resale.

37.     Rule 23(a)(1):  Numerosity.  The members of the Nationwide Class and

the New York Class are so numerous that joinder of all members is impracticable.  Plaintiff is

informed and believes that the proposed Nationwide Class and the New York Class each

contain thousands of purchasers of Prevagen who have been damaged by Defendants' conduct,

as alleged herein.  The precise number of members of the Nationwide Class and the New York

Class is unknown to Plaintiff.

38.     Rule 23(a)(2):  Existence and Predominance of Common Questions of

Law and Fact.  This action involves common questions of law and fact, which predominate

over any questions affecting individual members of the Nationwide Class and the New York

Class.  These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendants' representations, as alleged herein, are false and/or misleading, or objectively reasonable likely to deceive;

(b)    whether Defendants' alleged conduct violates federal and/or New York law;

(c)    whether Defendants engaged in false or misleading advertising; and

(d)    whether Plaintiff and members of the Nationwide Class and the New York Class are entitled to recover damages and, if so, in what amount(s).

39.    Rule 23(a)(3): Typicality.  Plaintiff's claims are typical of the claims of the members of the of the Nationwide Class and the New York Class because, *inter alia,* all Class members were injured through the uniform misconduct described above and were subject to Defendants' deceptive brain function and memory representations that accompanied each and every bottle of Prevagen.  Plaintiff is also advancing the same claims and legal theories on behalf of himself and all members of the Nationwide Class and the New York Class.

40.    Rule 23(a)(4): Adequacy of Representation.  Plaintiff will fairly and adequately protect the interests of the members of the Nationwide Class and the New York Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Nationwide Class and the New York Class.

41.    Rule 23(b)(3): Superiority.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual members of the Nationwide Class and the New York Class is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for members of the Nationwide Class and the New York Class, on an individual basis, to obtain

effective redress for the wrongs done to them.  Furthermore, even if members of the

Nationwide Class and the New York Class could afford such individualized litigation, the

Court system could not.  Individualized litigation would create the danger of inconsistent or

contradictory judgments arising from the same set of facts.  Individualized litigation would also

increase the delay and expense to all parties and the court system from the issues raised by this

action.  By contrast, the class action device provides the benefits of adjudication of these issues

in a single proceeding, economies of scale, and comprehensive supervision by a single court,

and presents no unusual management difficulties under the circumstances here.

<u>**CAUSES OF ACTION**</u>
<u>**COUNT I**</u>

**DECEPTIVE ACTS OR PRACTICES AND FALSE ADVERTISING**
**(Brought on Behalf of the New York Class)**

42.     Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

43.     Plaintiff brings this claim on behalf of himself and the New York Class.

This claim is asserted against the Defendants identified in Paragraphs 9-17 of this Complaint.

44.     As set forth in Paragraphs 18 through 34, which allegations are

incorporated as if set forth herein, Defendants have committed acts and practices that constitute

repeated and persistent fraudulent and illegal conduct and false advertising in violation of New

York General Business Law §§ 349 and 350, including misrepresenting, directly or indirectly,

expressly or by implication, that:

(a)     Prevagen improves memory;

(b)     Prevagen is clinically shown to improve memory;

(c)     Prevagen improves memory within 90 days;

(d)     Prevagen is clinically shown to improve memory within 90 days;

(e)     Prevagen reduces memory problems associated with aging;

(f)     Prevagen is clinically shown to reduce memory problems associated with

aging;

(g)     Prevagen provides other cognitive benefits, including but not limited to

healthy brain function, a sharper mind, and clearer thinking; and

(h)     Prevagen is clinically shown to provide other cognitive benefits,

including but not limited to healthy brain function, a sharper mind, and clearer

thinking.

45.     The representations set forth in Paragraph 44 are deceptive or misleading

in a material way,  and Plaintiff  and the New York Class have been injured by reason thereof.

46.     Consumers have suffered and will continue to suffer substantial injury as

a result of Defendants" violations of New York General Business Law §§ 349 and 350.  In

addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.

Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers,

reap unjust enrichment, and harm the public interest.

## COUNT II

### VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT
### ORGANIZATIONS ACT
### (Brought on Behalf of the Nationwide Class)

47.     Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

48.     Plaintiff brings this claim on behalf of himself and the members of the

Nationwide Class alleging violations of the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. §§ 1961-1968.  Plaintiff's substantive and conspiracy RICO claims are asserted against Defendants Underwood and Beaman.

49.     Plaintiff and Nationwide Class members, and each of them, are "person[s]" who were injured in their "business or property" by reason of Defendants' violations of RICO, within the meaning of 18 U.S.C. § 1964(c).  As such, Plaintiff and Nationwide Class members have standing to bring these RICO claims.

50.     Defendants Underwood and Beaman, and each of them, are "person[s]," as that term is defined in 18 U.S.C. § 1961(3).

51.     RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…." 18 U.S.C. § 1962(c).  As alleged herein, Defendants Underwood and Beaman violated Section 1962(c) by participating in or conducting the affairs of the Quincy Bioscience Enterprise through a pattern of racketeering activity by repeatedly defrauding consumers.  The methodology of their scheme to defraud Plaintiff and Nationwide Class members is alleged in Paragraphs 18-34 of this Complaint.

52.     RICO provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection … (c) of this section." 18 U.S.C. § 1962(d).  As alleged herein, Defendants Underwood and Beaman conspired to violate Section 1962(c) by participating in or conducting the affairs of the Quincy Bioscience Enterprise through a pattern of repeatedly defrauding consumers.  The methodology of their scheme to defraud Plaintiff and Nationwide Class members is alleged in Paragraphs 18-34 of this Complaint.

53.     As alleged herein, Defendants Underwood and Beaman undertook a fraudulent scheme to advertise, market, sell, and distribute Prevagen through the use of false and misleading statements and through the use of the U.S. mails and interstate wire facilities, including the Internet and television and radio broadcasts and transmissions.

54.     At all relevant times and as described herein, Defendants Underwood and Beaman carried out their scheme to defraud Plaintiff and Nationwide Class Members in connection with the conduct of an "enterprise," as that term is defined in 18 U.S.C. § 1961(4) – namely, the Quincy Bioscience Enterprise described in Paragraph 17 of this Complaint.

55.     The Quincy Bioscience Enterprise, whose activities affected interstate and foreign commerce, is an "association-in-fact enterprise," within the meaning of 18 U.S.C. § 1961(4), and consists of corporate entities associated together for the common purpose of selling Prevagen to Plaintiff and Nationwide Class members.

56.     The Quincy Bioscience Enterprise was separate and distinct from the pattern of racketeering activity (mail fraud and wire fraud) alleged herein. The Quincy Bioscience Enterprise was an ongoing organization or group and existed to advance the interests of the individual entities that comprise its membership, i.e., selling Prevagen to Plaintiff and Nationwide Class members. The members of the Quincy Bioscience Enterprise all served the common purpose of selling as much Prevagen to consumers as possible, therein maximizing their own profits and revenues and sharing the bounty derived from deceived and defrauded consumers. Each member of the Quincy Bioscience Enterprise benefited from the common purpose: the members of the Quincy Bioscience Enterprise sold more Prevagen, and received more for those than they otherwise would have, had Prevagen been truthfully

advertised, marketed, labeled, and advertised, thus earning more profits than they would have otherwise.

57.     In furtherance of the scheme, Defendants Underwood and Beaman engaged in acts of mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343, each of which constitute "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1)(B).

58.     Those acts of mail fraud and wire fraud include distributing the false and misleading statements concerning Prevagen described herein via the U.S. mails and interstate wire facilities, including television, radio, and the Internet, to members of the public, including Plaintiff and the Nationwide Class, as well as Defendants Underwood and Beaman communicating among themselves with respect to the scheme via interstate electronic mail and telephone with the common purpose of selling Prevagen to an unsuspecting public based upon the fraudulent and deceptive representations and omissions described herein.

59.     In addition to the foregoing, each download by a consumer, or view of one of the false and misleading advertisements and videos on the Internet, constituted a separate offense of wire fraud and a separate act of racketeering activity.

60.     As a direct result of the foregoing violations of 18 U.S.C. § 1962(c) and (d), Plaintiff and Nationwide Class members have been injured in their business and/or property in multiple ways, including that they paid for Prevagen which did not, and could not, provide the benefits promised in the advertisements and other promotional materials associated with Prevagen and incurred resulting out-of-pocket losses.

61.     But for the predicate acts described above – namely, Defendant Underwood's and Defendant Beaman's numerous false and misleading statements and

marketing and advertising containing omissions sent via interstate wire facilities – Plaintiff and Nationwide Class members would not have paid as high a price for Prevagen as they did, or would not have purchased Prevagen at all.

62.     The RICO violations described herein have directly and proximately caused injuries and damages to Plaintiff and Nationwide Class members, and Plaintiff and Nationwide class Members are entitled to bring this action for three times their actual damages, as well as injunctive and/or equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

A.     Certifying the Nationwide Class and the New York Class, as requested herein;

B.     Awarding compensatory damages to Plaintiff and the members of the Nationwide Class and the New York Class, according to proof to be offered at trial;

C.     Awarding treble damages to Plaintiff and the Nationwide Class, as provided by RICO, according to proof to be offered at trial;

D.     Awarding injunctive relief as permitted by law or equity, including enjoining the Defendants from continuing the unlawful practices alleged herein;

E.     Awarding costs and attorneys' fees, as permitted by applicable law; and

F.     Providing such other relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED:  February 27, 2017

                    WILENTZ, GOLDMAN & SPITZER, P.A.
                    KEVIN P. RODDY
                    DANIEL R. LAPINSKI
                    MICHAEL F. FRIED

                    By_____
                                KEVIN P. RODDY

                    90 Woodbridge Center Drive, Suite 900
                    Woodbridge, NJ  07095
                    Telephone:  (732) 636-8000
                    Facsimile:  (732) 726-6686
                    E-mail:  kroddy@wilentz.com
                              dlapinski@wilentz.com
                              mfried@wilentz.com

                    *Attorneys for Plaintiff*